IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID CHESTER FAULKNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 10-2722-JDT-dkv |
| | ) | |
| HENRY STEWARD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING DEFENDANTS' MOTION TO DISMISS,
PROHIBITING PLAINTIFF FROM MAKING FURTHER FALSE
STATEMENTS REGARDING SETTLEMENT OFFERS,
RULING ON ALL OTHER PENDING MOTIONS, AND
SETTING DISPOSITIVE MOTION DEADLINE

The prisoner Plaintiff, David Chester Faulkner, who is currently incarcerated at the Morgan County Correctional Complex ("MCCX") in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 concerning his prior incarceration at the West Tennessee State Penitentiary ("WTSP"). (Docket Entry 1.)[1] The Court subsequently entered an order partially dismissing the complaint and directing that eight Defendants be served with process. (D.E. 17.) The Court later allowed Plaintiff to amend his complaint to include two additional Defendants. (D.E. 22 & 66.) Before the Court are numerous pending motions, including Defendants' motion to dismiss.

---

[1] Attorneys have, at times, made appearances on Plaintiff's behalf (D.E. 189, 190, & 194), but subsequently filed motions to withdraw which were granted (D.E. 201, 206, 209, & 211.) Attorney Eric John Burch filed a Notice of Appearance on Plaintiff's behalf on March 20, 2014. (D.E. 238.)

On November 14, 2013, Defendants filed a Notice to the Court (D.E. 214), accompanied by an affidavit from their counsel of record, Arthur Crownover II (Crownover Aff., D.E. 214-1). In his affidavit, Mr. Crownover avers that he received a letter dated March 13, 2013, from Plaintiff offering to settle this case for $1,000.00 in cash and forgiveness of approximately $4,100.00 in costs that he owes the Tennessee Department of Correction ("TDOC") for copying, postage, etc. Crownover responded by letter, advising Plaintiff that a more reasonable demand would be to forgive $500 in copying costs and that if Plaintiff wanted to make such a demand it would be considered. However, Plaintiff responded by letter, stating that Crownover's suggestion was an insult. (D.E. 214-1 at 3, ¶ 5; id. at 6-13, Attach. 2.) Crownover further avers that, during the summer of 2013, he received a number of telephone calls from attorneys Plaintiff had contacted, inquiring if there had been an $85,000.00 settlement offer made in this case. He told them no, that Plaintiff had given them false information. (Id. at 3, ¶ 6.)

Crownover subsequently became aware that WSMV Channel 4 in Nashville aired news reports on November 12, 2013, and November 13, 2013, about Plaintiff and this lawsuit. The news reports, which were televised and posted on the Channel 4 website,[2] discussed the case and showed a letter dated June 22, 2013, which Plaintiff claimed he had received from Crownover, offering $85,000.00 to settle this matter. (Id. at 1-2, ¶¶ 2-3; id. at 5, Attach. 1.) Crownover avers that he did not write the letter and that it is an obvious

---

[2] The Court has viewed both news reports.

forgery created by cutting and pasting from other documents. (Id. ¶¶ 2, 4.) The letter lists Plaintiff's address as the MCCX (id. at 5, Attach. 1); however, Plaintiff had been transferred to the Riverbend Maximum Security Institution ("RMSI") almost a year earlier, on June 29, 2012 (id. at 2, ¶ 2; D.E. 101).[3] The letterhead on the document also lists Michael Moore as the Solicitor General of the Tennessee Attorney General's Office, but Moore did not hold that position in June 2013. (D.E. 214-1 at 2, ¶ 2; id. at 5, Attach. 1.)

On November 20, 2013, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 11(b), relying on Crownover's previously-filed affidavit. (D.E. 215.) Defendants assert that Plaintiff has violated Rule 11 by falsely stating to the news media, the public, and potential attorneys that the Defendants had offered $85,000.00 or more to settle this case. Plaintiff has responded to the motion to dismiss (D.E. 216, 217, & 228), calling Mr. Crownover a liar and asserting that Crownover did, in fact, send him the letter in question. Plaintiff states he could not have created the letter because he does not have access to a typewriter, printer, or photocopier. (D.E. 216.)

The Court finds credible Mr. Crownover's assertion that he did not write the letter purporting to make a settlement offer of $85,000.00. The letter is unprofessional in appearance and tone and contains significant errors. The Court is familiar with Mr. Crownover's work and is confident he would not permit such a shoddy document to be sent

---

[3] Plaintiff was transferred to the Bledsoe County Correctional Complex in Pikeville, Tennessee, in November 2013 (D.E. 213) and back to the MCCX in December 2013 (D.E. 218).

over his signature. While Plaintiff himself may not have created the letter, it appears that someone acting on his behalf did so.

On December 30, 2013, Defendants filed a Notice to the Court accompanied by the affidavit of Michael Carson, a Correctional Counselor at the MCCX. (D.E. 221 & 221-1.) The affidavit indicates that on December 12, 2013, Plaintiff asked Carson to make 40 "legal copies" of some letters for him. (D.E. 221-1 at 2, ¶¶ 3-4.) One of the letters was handwritten by Plaintiff and the other was the falsified offer of settlement he claimed was from Mr. Crownover.[4] Plaintiff told Carson that he was going to send out the letters in order to find an attorney to help him settle a lawsuit. (Id. ¶ 4; id. at 5-7.) Carson advised Plaintiff that letters soliciting a lawyer were not privileged legal documents under TDOC policy and that he would have to pay for the copies, to which Plaintiff agreed. While making the copies for Plaintiff, Carson noticed irregularities in the letter supposedly from Crownover. He contacted MCCX Associate Warden, Doug Cook, and told Cook he suspected the document had been altered. Cook agreed the letters were not privileged, and Carson then contacted Mr. Crownover and explained his concerns. (Id. at 2-3, ¶¶ 5-6.)[5]

---

[4] The letter handwritten by Plaintiff refers to the purported settlement letter from Crownover and then states, "I recieved [sic] a offer of $115,000 4 days ago." (Id. at 5.)

[5] In response to this Notice, Plaintiff filed a motion for contempt (D.E. 223) asking for Mr. Crownover to be held in contempt for having Carson provide him with copies of Plaintiffs letters, which he characterizes as legal correspondence. He also filed a motion to compel (D.E. 224), asking the Court to order that his privileged legal copies not be turned over to Defendants' counsel. These motions are DENIED. The information contained in the letters was either already made public in Plaintiff's complaint in this case, covered in the news stories that ran on Channel 4, or have been discussed with Mr. Crownover by the various attorneys who received Plaintiff's letters.

4

Since the motion to dismiss was filed, Defendants have filed several additional Notices stating that Mr. Crownover has been contacted by at least ten more attorneys from across Tennessee who received the same or similar handwritten letters from Plaintiff claiming that Mr. Crownover has offered various sums of money, up to $150,000.00, to settle this case. Each of those handwritten letters was accompanied by a copy of the falsified June 22, 2013, letter. (*See* D.E. 226, 226-1, 229, 229-1, 231, 231-1, 232, 232-1, 237, & 237-1.)

The Court finds that Plaintiff has engaged in egregious conduct by disseminating false information regarding the potential for settlement of this case. However, Rule 11 is inapplicable at this time. Rule 11(b) clearly states that "*[b]y presenting to the court* a pleading, written motion, or other paper," an attorney or unrepresented party certifies it is not presented for any improper purpose. Plaintiff has not presented to this Court any document directly making the false statement that significant settlement offers have been made in this case. So far, those false statements have been made to third parties. Therefore, dismissal under Rule 11 is not warranted. Furthermore, even if Rule 11 were applicable, there is no indication the Defendants complied with Rule 11(c)(2), the "safe harbor" provision. That provision requires that a motion for Rule 11 sanctions be served on the opposing party at least 21 days before it is filed with the Court. This allows the opposing party an opportunity to withdraw or correct the challenged conduct.

For these reasons, Defendants' motion to dismiss is DENIED. However, the Court will not allow Plaintiff to continue to make false statements regarding offers of settlement in this case. Therefore, it is hereby ORDERED that Plaintiff shall not make any additional

false statements, whether written, oral, electronic, or otherwise, to any person or entity concerning an offer to settle this case. If Plaintiff fails to comply with this order, the Court may impose appropriate sanctions, up to and including dismissal of this action. *See* Fed. R. Civ. P. 41(b).

With regard to the remaining motions, on April 11, 2013, Plaintiff filed three motions to compel regarding his medical records. (D.E. 159, 161, and 162.) He states that the 870 pages of medical records he received in discovery did not include pertinent records from Baptist Hospital in Ripley, Tennessee, and from Metro General Hospital in Nashville, Tennessee. He asks that the Defendants be ordered to provide those records or, apparently in the alternative, that the hospitals be ordered to provide Plaintiff with the records. Defendants responded to the motions by stating that Plaintiff's records from the outside hospitals are not in their possession and that Plaintiff should seek the records directly from the hospitals. (D.E. 170.) The Defendants cannot be compelled to produce what they do not have; therefore, the motions to compel production of the hospital records are DENIED.

Thereafter, Plaintiff filed four motions asking the Court to issue subpoenas to the hospitals in question, compelling them to produce the medical records he seeks. (D.E. 180, 181, 187, & 191.) These motions are also DENIED. However, the Clerk is directed to issue two blank subpoena forms and send them to Plaintiff. It is Plaintiff's responsibility, not the Court's, to complete the subpoena forms. Plaintiff must then arrange to have the subpoenas served in accordance with Fed. R. Civ. P. 45(b). However, if Plaintiff wants the U.S.

Marshal to serve the completed subpoenas, he must return the completed forms to the Clerk along with a motion making that request.

Also on April 11, 2103, Plaintiff a motion asking that dates be set for the oral depositions of all of the Defendants in this case. (D.E. 160.) Plaintiff filed a similar motion on March 2, 2011 (D.E. 54), which the Court denied on March 29, 2012 (D.E. 66 at 5). The current motion is also DENIED for the reasons stated in the prior order.[6]

Plaintiff filed another motion on April 11, 2013 (D.E. 162), asking the Court to compel Criminal Section Chief Robert J. Moss, Jr., of the United States Department of Justice ("DOJ") to turn over all documents pertaining to a civil rights investigation that was conducted by the DOJ with regard to the November 25, 2009, incident that is the subject of this case. (D.E. 162.) That motion is DENIED. Neither Moss nor the DOJ are parties to this action, and the Court has no authority to compel them to turn over any documents.

Plaintiff's motions to set a trial date (D.E. 163 & 236) are GRANTED. A trial date will be reset by the Clerk.

The remaining motions filed by Plaintiff on April 11, 2013, are a motion to compel production of the Internal Affairs ("IA") report of the investigation into the incident in this case (D.E. 164) and a motion asking that the Defendants be required to provide him with

---

[6] Even if the Court had been inclined to allow Plaintiff to take the Defendants' oral depositions, he did not indicate how he intended to pay for the services of a court reporter for the depositions. Plaintiff's indigent status does not entitle him to such services at government expense or at the expense of the Defendants. *See* Coates v. Kafczynski, No. 2:05-CV-3, 2006 WL 416244, at *2-3 (W.D. Mich. Feb. 22, 2006); Smith v. Campagna, No. 94 C 7628, 1996 WL 364770, at *1 (N.D. Ill. June 26, 1996); Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991).

color copies of the photographs that were taken of the injuries he sustained in that incident (D.E. 166). Defendants did not respond to these particular motions.

Although Defendants did not respond to the motion to produce the IA report, in their response to an unrelated motion, Defendants state that:

> the only investigative report regarding the November 25, 2009 incident is the report of institutional investigator, Lt. Thomas Shell, dated December 22, 2009, which was previously provided to the plaintiff in response to [his] First Set of Requests for Production of Documents, served December 5, 2011. There is no other investigative report . . . .

(D.E. 188 at 2.) As it appears that the only investigative report that exists has already been provided to Plaintiff, the motion to produce the IA report is DENIED.

With regard to Plaintiff's motion to be provided with color copies of the photographs of his injuries, he states that the photocopies he was given are in black and white and do not clearly show his injuries. The Defendants have filed no response to Plaintiff's motion; therefore, it is GRANTED. If they have not already done so, Defendants are ORDERED to provide Plaintiff with color copies of the photographs in question within 21 days after the date of this order.

Plaintiff filed a motion on April 17, 2013, asking the Court to require the U.S. Marshal to find and personally serve Defendant Hope Smith. (D.E. 172.) The last summons issued for Smith was returned unexecuted. (D.E. 169.) The Marshal noted that a WTSP employee had advised that Smith resigned on April 30, 2006. (Id. at 1.) Plaintiff contends that information is false because Smith was present at the incident in 2009. The reason for the 2006 date on the return is unclear, but Plaintiff's motion still must be denied. The Marshal's

notation on the return also states, "last known address provided will send to address by certified mail." (Id.) Thus, the process was sent to Smith's last known home address, but the package was returned. (Id. at 1, 3.) Unless Plaintiff can provide the Marshal with additional information concerning where Smith is currently employed or where she currently lives, process will not be re-issued. Therefore, the motion is DENIED at this time. Plaintiff is hereby allowed 30 days to submit any further information that will enable the Marshal to serve Defendant Hope Smith. If Plaintiff fails to do so, the claims against Smith will be dismissed without prejudice without further notice.

On April 22, 2013, Plaintiff filed a motion to compel the Defendants to turn over the medical and institutional records of TDOC inmate Rodney McAllister. (D.E. 174.) Plaintiff states that McAllister was also subjected to beatings by the Defendants and will be a witness in this case. However, Plaintiff filed a motion for those same records on October 3, 2012. (D.E. 134.) In a motion filed February 4, 2013 (D.E. 142), Plaintiff stated that he had received McAllister's records but needed another copy for his inmate advisor. The Court found the October 2012 motion moot and denied the motion for an additional copy of the records. (D.E. 150 at 7-8.) As Plaintiff has conceded that he has already been given McAllister's records, the current motion is also DENIED. If he is again seeking a second copy of those records, that request is also DENIED.[7]

---

[7] Inexplicably, Defendants filed a response to the current motion, arguing that Plaintiff is not entitled to the records. (D.E. 179.)

9

Also on April 22, 2013, Plaintiff filed a motion to compel (D.E. 178), asserting that Defendants had not provided their redacted personnel files within the time ordered by the Court. (D.E. 150 at 6, 8.) However, the Court had granted the Defendants an extension of time to provide the personnel files, through April 30, 2013. (D.E. 158.) Thus, that motion is DENIED. Plaintiff's motion to compel filed May 6, 2013 (D.E. 186), concedes that he received over 3,000 pages of personnel files. However, he contends that the Defendants redacted more than personal information, including disciplinary hearings, reprimands, and "evaluations of any investigations." (D.E. 186.)

In response to Plaintiff's motion, Defendants state that, other than personal information, the only information redacted from the personnel files were copies of performance evaluations, which are not public records. *See* Tenn. Code Ann. § 8-30-313(d). Defendants further state that disciplinary actions, which are separate from the performance evaluations, were not redacted from the files and that no investigative reports were redacted. (D.E. 188 at 2.) Therefore, Plaintiff's motion with regard to the personnel files is DENIED.

Plaintiff filed a motion to compel on June 17, 2013 (D.E. 199), in which he contends that personnel at RMSI, where he was housed at the time, had stolen or confiscated legal mail he had sent to the mailroom to be mailed. He seeks to add several RMSI employees as defendants, and asks the Court to order TDOC and RMSI to mail all of his legal mail.

Plaintiff's motion, which is actually a motion to amend the complaint, is DENIED. The deadline for filing motions to join parties and amend pleadings expired on May 1, 2012.

(D.E. 50.) In addition, any claims concerning events occurring at RMSI should be filed in the U.S. District Court for the Middle District of Tennessee, at Nashville.

On January 2, 2014, Plaintiff filed a motion asking the Court to remove attorneys Marc Walwyn, Cody Allison, and Phillip Davidson as his attorneys of record. (D.E. 222.) He states that the docket sheet still shows that they represent him. Plaintiff is mistaken, and his motion is DENIED. While the names and contact information for the attorneys are still shown on the docket, there is a "terminated" date listed for each of them, which indicates they are no longer counsel of record. Keeping information regarding prior counsel on the docket serves the purpose of allowing the Court to have a record of who has represented each party throughout a particular case.

On February 6, 2014, Plaintiff filed a motion to produce documents. (D.E. 233.) He states that he received his medical records in June 2013 in response to his discovery request, but that he is still being treated for his injuries from the 2009 incident. He asks that the Defendants be ordered to supplement their discovery responses by providing his medical records from June 1, 2013, to the present. That motion is DENIED. A party is required to supplement discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Plaintiff's medical records were not "incomplete" when they were produced. What Plaintiff appears to seek is not mere supplementation of discovery but *ongoing* discovery concerning his continuing medical treatment. However, the discovery deadline expired on September 30, 2013. Therefore, the motion to produce additional medical records is DENIED.

In summary, Defendants' motion to dismiss, Docket Entry 215, is DENIED, but Plaintiff is prohibited from making further false statements, as set forth above.

Docket Entries 159, 160, 161, 162, 164, 167, 174, 178, 186, 199, 222, and 224 are DENIED.

Docket Entry 166 is GRANTED. If they have not already done so, the Defendants are ORDERED to provide Plaintiff with color copies of the photographs of his injuries within 21 days after the date of this order.

Docket Entry 172 is DENIED, but Plaintiff is allowed 30 days to submit additional information that would facilitate service on Defendant Hope Smith.

Docket Entries 180, 181, 187, and 191 are also DENIED, but the Clerk is directed to issue two blank subpoenas and send them to Plaintiff.

Docket Entries 163 and 236 are GRANTED. The Clerk is directed to set this case for trial. Dispositive motions shall be filed by May 15, 2014.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE